UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LITTLE RIVER BAND OF OTTAWA
INDIANS and its EMPLOYEE
WELFARE PLAN,

        Plaintiffs,                              Case Number 15-13708

v.                                                   Honorable David M. Lawson

BLUE CROSS BLUE SHIELD OF MICHIGAN,

        Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

This case is one of over thirty filed in this district in which defendant Blue Cross & Blue Shield of Michigan (Blue Cross) is being sued by various businesses to recover funds Blue Cross illegally billed and retained in violation of its third-party administrator (TPA) agreements and in breach of its fiduciary duty under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* A unique aspect of this case, however, is that the plaintiff, Little River Band of Ottawa Indians, is a tribal government. ERISA does not apply to certain governmental employee benefit plans. And Blue Cross insists that the plaintiffs have not alleged enough facts in its complaint to establish that its plan falls within ERISA's regulations.

Blue Cross has filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the counts of the complaint brought under ERISA. The plaintiffs also alleged several state law claims, which Blue Cross also moved to dismiss as preempted by ERISA, if the former claims survive, and because a state intermediate appellate decision favors dismissal. Blue Cross also argues that the plaintiffs did not plead sufficient facts to support a specific theory seeking damages because Blue

Cross paid too much for hospital services that were supposed to be capped at "Medicare-Like Rates."

The motion to dismiss will be denied with one exception. The ERISA claims survive because the plaintiffs adequately alleged that less than "substantially all" of its plan participants perform commercial activities, thereby invoking a statutory exception to the exclusion from ERISA coverage. The state law claims, therefore, are preempted and will be dismissed, subject to revival if later in these proceedings the plaintiffs fail to prove its allegations concerning the census of its plan participants. The plaintiffs also have pleaded sufficiently the allegations necessary to satisfy the conditions precedent for recovery of damages for payments in excess of "Medicare-Like Rates."

I.

Plaintiff Little River Band of Ottawa Indians is a federally recognized Indian tribe. 25 U.S.C. § 1300k–2(a). It has "more than 4,000 enrolled members, most of whom live within or near the Band's aboriginal lands in the State of Michigan." *Nat'l Labor Relations Bd. v. Little River Band of Ottawa Indians Tribal Gov't*, 788 F.3d 537, 540 (6th Cir. 2015). The Band has established an Employee Welfare Plan, which also is a plaintiff in this action.

The Band entered into an administrative services contract ("ASC") with defendant Blue Cross Blue Shield of Michigan on March 1, 2005. Under that agreement, the Band was a "self-funded" customer of Blue Cross. That meant that the Band would pay the medical care costs of its employees from its own funds (up to a stop-loss limit), instead of purchasing health insurance for them. The contract called for Blue Cross to act as a third-party administrator for health care claims submitted by the Band's employees. Under the ASC, Blue Cross would receive, process, and pay health care claims from the Band's employees, provide the Band with stop-loss insurance coverage,

and allow the Band's employees access to Blue Cross's provider networks and their discounted rates.

"The ASC did not contain any pricing terms," but "the specific fees to be paid by [the Band] in exchange for the administrative services provided by [Blue Cross] were enumerated in a [series of] 'Schedule A'" documents that were executed by the parties each year in the course of renewing the ongoing service contract. Compl. ¶ 23. Blue Cross prepared regular statements for the Band reciting the amounts paid for healthcare claims and itemizing various fees authorized by the ASC, and the Band made payments based on those statements. However, the complaint alleges that Blue Cross substantially overstated the amounts owing by adding administrative charges that never were disclosed and that the Band never agreed to pay.

These allegations sound a familiar note. Blue Cross has been accused of overcharging in a number of similar actions brought by other self-funded customers. The first such case to go to trial was *Hi-Lex Controls, Inc., v. Blue Cross Blue Shield of Michigan*, No. 11-12557 (E.D. Mich.) (Roberts, J.). "[A]fter a nine-day bench trial, the district court ruled that [Blue Cross] had violated its general fiduciary duty under § 1104(a) [of ERISA] and that Hi-Lex's claims were not time-barred. The court awarded Hi-Lex $5,111,431 in damages and prejudgment interest in the amount of $914,241." *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 743 (2014) (affirming judgment for plaintiff).

In their complaint, the plaintiffs allege that Blue Cross charged them the same types of undisclosed fees under their service contract as those that the Sixth Circuit found that Blue Cross had concealed improperly in *Hi-Lex*, including amounts classified as "Other Than Group" ("OTG") subsidies, "Contingency/Risk" surcharges, "Retiree" surcharges, and "Network Access" fees. The

Band also alleges a similar claim with respect to "Physician Group Incentive Program" ("PGIP") fees. According to the plaintiffs, those fees were retained by Blue Cross as part of the "Administrative Service Fee" that the Band agreed to pay in the Schedule A contract renewal documents. But the charges were not reflected in the amount shown as "Administrative Fees" in annual financial reports about the plan that Blue Cross prepared; instead they were buried within the number reported as "Amounts Billed" by health care providers, rather than itemized under categories reserved for reporting "costs" or "fees." The plaintiffs contend that all of the various disclosure documents supplied by Blue Cross were misleading and failed to disclose adequately the full amount of fees that actually were being charged against the plan by the defendant.

The plaintiffs also allege that Blue Cross breached its fiduciary obligations under ERISA by failing to ensure that claims paid to "Medicare-participating hospitals" on behalf of plan beneficiaries who were employees and members of the Band were capped at "Medicare-Like Rates." The plaintiffs contend that federal regulations limit payments for hospital services made under benefit plans administered by Native American tribal organizations. *See* 42 C.F.R. § 136.30. According to the complaint, Blue Cross knew that it was supposed to pay Medicare-participating hospitals at rates no higher than those allowed by Medicare for services rendered to members of the Band covered under the plan, but it failed to cap payments for eligible claims at those rates, and instead "us[ed] Plan assets to pay standard contractual rates on services that were eligible for lower MLR payment rates." Compl. ¶ 135.

The plaintiffs filed their complaint on October 20, 2015 raising claims under ERISA for breach of fiduciary duty contrary to 29 U.S.C. § 1104(a) (Count I) and improper self-dealing contrary to 29 U.S.C. § 1106(b)(1) (Count II). The complaint also sets forth various claims under

state law for: violation of the Michigan Nonprofit Health Care Corporation Reform Act, Mich. Comp. Laws § 550.1211 (Count III); violation of the Michigan Health Care False Claims Act, Mich. Comp. Laws § 752.1009 (Count IV); breach of contract and breach of the covenant of good faith and fair dealing (Count V); breach of common law fiduciary duty (Count VI); conversion (Count VII); and fraud (Counts VIII and IX). The defendant responded with its motion to dismiss. The Court heard oral argument on the motion on February 16, 2016.

II.

The defendant's motion is brought under Federal Rule of Civil Procedure 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the Court views complaint in the light most favorable to the plaintiff, the allegations of fact are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive a motion to dismiss under that rule, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the court, but conclusions may not be accepted unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but they are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

A.

Blue Cross argues that counts I and II of the complaint, which are based on sections 404(a) and 406(b)(1), respectively, of ERISA (29 U.S.C. §§ 1104(a), 1106(b)(1)), must be dismissed because ERISA does not cover "governmental plans," and the complaint does not contain enough specific facts to establish that the Band's plan is not a governmental plan. The plaintiffs disagree.

"ERISA applies to all employee benefit plans created by an employer engaged in interstate commerce or any industry affecting interstate commerce." *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1034 (6th Cir. 1993) (citing 29 U.S.C. § 1003(a)(1)) However, ERISA does "not apply to any employee benefit plan if [] such plan is a governmental plan (as defined in section 1002(32))." 29 U.S.C. § 1003(b)(1).

In 2006, Congress amended the definition of "governmental plan" in section 1002(32) to make "certain plans established and maintained by Indian tribal governments exempt from ERISA." *Bolssen v. Unum Life Ins. Co. of Am.*, 629 F. Supp. 2d 878, 881 (E.D. Wis. 2009) (citing Pub. L. No. 109-280, § 906(a)(2)(A), 120 Stat. 780, 1051 (2006)). "The amendment's legislative history

suggests that Congress expanded the definition to clarify the legal ambiguity regarding the status of employee benefit plans established and maintained by tribal governments." *Dobbs v. Anthem Blue Cross & Blue Shield*, 475 F.3d 1176, 1178 (10th Cir. 2007). The current version of ERISA's glossary section, as amended in 2006, charts a rather serpentine path for determining if a benefit plan established by a Native American tribal government is a "governmental plan" exempted from regulation under the Act:

> The term "governmental plan" includes a plan which is established and maintained by an Indian tribal government (as defined in section 7701(a)(40) of Title 26), a subdivision of an Indian tribal government (determined in accordance with section 7871(d) of Title 26), or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function).

29 U.S.C. § 1002(32). "'The determination of whether a tribal plan qualifies as a governmental plan under § 1002(32) requires a fact-specific analysis of the plan at issue and the nature of its participants' activities.'" *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1285 (10th Cir. 2010) (quoting *Dobbs*, 475 F.3d at 1178).

Blue Cross contends that the complaint fails to state a claim because (1) it affirmatively alleges that the plaintiff Band is an Indian tribal government, (2) benefit plans administered by tribal governments are exempted from the governing provisions of ERISA except under specific circumstances, and (3) the complaint does not set forth any specific facts to show plausibly that the plan satisfies the requisites for regulation under the Act. On the third point, Blue Cross argues that the allegations in paragraph 11 of the complaint — that the Plan "offers health care benefits to over 1,000 employees, other tribal members, elected officials, Little River Casino Resort employees, and Little River Trading Post employees through the Plan" — are inadequate because they are

conclusory, and they fail to allege plausibly that "'substantially all' of the Plan's participants perform services that are 'in the performance of commercial activities.'" Def.'s Br. in Support of Mot. Dis. at 5.

The Court disagrees with the defendant's argument for a couple of reasons. For one, it appears that the defendant misreads section 1002(32). Under that section, a governmental plan is not excluded from ERISA governance unless (1) the plan is "established and maintained by an Indian tribal government" or a subdivision, agency, or instrumentality of a tribal government; (2) "*all* of the participants" of the plan are employees of that government, subdivision, agency, or instrumentality; and (3) "substantially all" of the services of each employee "are in the performance of essential governmental functions but not in the performance of commercial activities." The plaintiffs need not allege in their complaint that substantially all of the Plan participants are employed in commercial activities (as Blue Cross suggests). The plaintiffs can establish that the Plan is covered by ERISA by alleging that *some* of the Plan participants are engaged in *some* commercial activities, such that "substantially all" of their duties do not encompass the performance of essential, non-commercial governmental functions. *See Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1285 (10th Cir. 2010) (holding that "a plan qualifies as a governmental plan [under section 1002(32)] only if . . . all of the participants are employees primarily engaged in essential governmental functions rather than commercial activities").

Second, the allegations in paragraph 11 of the complaint are not conclusory, although they do require some inference drawing. It is not clear from the complaint whether the Little River Casino Resort or the Little River Trading Post — whose employees, it is alleged, are covered by the Plan — are agencies or instrumentalities of the tribal government. If they are not, that would be the

end of the story, as it plainly would appear that the Plan covers some non-tribal-government employees and therefore would not qualify as a governmental plan under section 1002(23). It is not difficult to infer from paragraph 11's allegation, however, that Casino Resort and Trading Post employees are engaged primarily in commercial activities, and therefore "substantially all" of their work is not devoted to "the performance of essential governmental functions." *See Bolssen v. Unum Life Ins. Co. of Am.*, 629 F. Supp. 2d 878, 881 82 (E.D. Wis. 2009) (observing that the operation of a casino by an Indian tribe "'is virtually identical to scores of purely commercial casinos across the country'") (quoting *San Manuel Indian Bingo & Casino v. NLRB*, 475 F.3d 1306, 1316 (D.C. Cir. 2007)). That inference is fortified by the findings of the Sixth Circuit in its recent decision in *National Labor Relations Board v. Little River Band of Ottawa Indians Tribal Government*, 788 F.3d 537, 540 (6th Cir. 2015), strongly suggesting that many covered employees are *not* engaged exclusively in governmental, non-commercial activities:

> The record in this case shows that the [Band's] casino has 905 employees — 107 of whom are enrolled members of the Band, 27 of whom are members of other Indian tribes, and 771 of whom are neither members of the Band nor of any other Indian tribe. The majority of casino employees live outside the Band's trust lands, and the majority of the casino's customers are not members of Indian tribes. Apart from the casino, 245 employees currently work for the Band's other governmental departments and subordinate organizations. Of this number, 108 are members of the Band and 137 are not members of the Band. In sum, of the Band's 1,150 total employees, 908 are not members of the Band.

788 F.3d at 540.

Discovery in this case ultimately may establish that all of the plan participants are primarily engaged in essential governmental functions rather than commercial activities. If that is true, then the plaintiffs may be vulnerable to dismissal of their ERISA claims on summary judgment or at trial. *Daft v. Advest, Inc.*, 658 F.3d 583, 590-91 (6th Cir. 2011) (holding that "the existence of an ERISA

plan [is] an element of a plaintiff's claim under Section 502(a)(1)(B)"). For now, however, the allegations in the complaint are sufficient to allow the plaintiffs to survive a motion to dismiss the ERISA claims at the pleading stage of this case.

B.

Blue Cross also argues that the state law claims should be dismissed for two reasons: that the holding by the Michigan Court of Appeals in *Calhoun County v. Blue Cross Blue Shield Michigan*, 297 Mich. App. 1, 824 N.W.2d 202 (2012), requires dismissal where the court of appeals held that the fees in question, assessed under the terms of an identical administrative services contract between the defendant and another plaintiff, fully were allowed; and if the ERISA claims are allowed to proceed, then all of the state law claims are preempted and must be dismissed. The plaintiffs concede the second point, which renders unnecessary the determination of the first argument.

"'[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.'" *Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 419 (6th Cir. 2014) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). The plaintiffs' state law claims therefore will be dismissed without prejudice. If a factual showing is made that establishes the Plan as a "governmental plan" within the meaning of 29 U.S.C. § 1002(32), then the plaintiffs may seek to revive their state law claims and the defendant may revisit the applicability and impact of *Calhoun County*.

C.

Blue Cross argues further that the complaint fails to allege sufficient specific facts to show that the plaintiffs were entitled to have payments for hospital services capped at "Medicare-Like Rates." Section 136.30 of Title 42 of the Code of Federal Regulation limits the amount that a "Medicare-participating hospital" may charge for healthcare services provided to a Native American patient and paid for by a health benefits plan administered by a tribal organization under the federally funded programs that provide healthcare for tribal members. The regulation states that "[a]ll Medicare-participating hospitals . . . that furnish inpatient services must accept no more than the rates of payment under the methodology described in this section as payment in full for all items and services authorized by Indian Health Services ("IHS"), Tribal, and urban Indian organization entities, as described in paragraph (b) of this section." 42 C.F.R. § 136.30(a). "The payment methodology under this section applies to all levels of care furnished by a Medicare-participating hospital [that are] authorized by a Tribe or Tribal organization carrying out a [Contract Health Service ("CHS")] program of the IHS under the Indian Self-Determination and Education Assistance Act, as amended, Pub. L. 93-638, 25 U.S.C. § 450 *et seq.*" 42 C.F.R. § 136.30(b).

The plaintiffs allege in their complaint that Blue Cross was aware of the federal laws governing Medicare-Like Rates, but it used Plan assets to overpay for the services eligible for those lower rates. The defendant contends that the allegations are insufficient to make that claim because the plaintiffs did not allege that in all instances a laundry list of specific statutory and regulatory conditions for capping payments to providers at such rates were satisfied. The defendant's position is that the complaint does not adequately plead satisfaction of all conditions precedent to its putative obligation to cap plan payments at rates no higher than those paid by Medicare.

However, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). The plaintiffs plainly alleged in its complaint that "[s]ince July 5, 2007, Plaintiffs should have been paying no more than Medicare-Like Rates ("MLR") for all levels of care furnished by Medicare-participating hospitals authorized by Plaintiffs' carrying out of a Contract Health Service ("CHS") program." Compl. ¶ 2. The plaintiffs also alleged that "[Blue Cross] has been collecting more than the Plan is required to pay *for MLR eligible claims* and has paid Medicare-participating hospitals amounts in excess of MLR *for such claims*." *Ibid.* The allegation that Blue Cross paid out more than it should have "for MLR eligible claims" that were "authorized [under] the Contract Health Service ("CHS") program" plainly implies that there were some such "eligible claims," i.e., that, at least as to those claims that were authorized and eligible, all conditions precedent to the payment cap were satisfied.

The plaintiffs do not allege in their complaint that *all* of the claims in question were "MLR eligible," only that, for those claims that were eligible, the defendant failed to pay appropriate rates. Those allegations are sufficient at the pleading stage to allege that the plaintiffs' claimants submitted some claims for CHS-authorized services that satisfied all of the regulatory requirements for payments to be capped, but that the defendant nevertheless failed to ensure that payments for those claims were appropriately capped. Where the plaintiffs also allege that Blue Cross knew that the payments should have been capped, and that it nevertheless paid medical providers at rates higher than those allowed by law, that is a sufficiently plausible allegation that the defendant failed to perform its duties diligently to "'[make] all decisions regarding an ERISA plan [] with an eye single to the interests of the participants and beneficiaries'" and to "act with the 'care, skill, prudence, and diligence of a prudent person acting under similar circumstances.'" *Pipefitters Local 636 Ins. Fund*

*v. Blue Cross & Blue Shield of Michigan*, 722 F.3d 861, 867 (6th Cir. 2013) (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448-49 (6th Cir. 2002)); *Hornady Transp. LLC v. McLeod Health Servs., Inc.*, 773 F. Supp. 2d 622, 633 (D.S.C. 2011) (holding that "[p]laintiffs allege that [Blue Cross of South Carolina] breached its fiduciary duty by failing to provide accurate pricing information or otherwise to assure that [the co-defendant medical provider] was paid based on the rates allowed under its Preferred Provider Agreement. . . . [T]hese allegations [are] sufficient to state a claim for breach of fiduciary duty under ERISA") (citing 29 U.S.C. § 1132(a)(2)). Blue Cross contends that its fiduciary duty did not extend to ensuring that claims were paid at appropriate rates. However, that argument is merely a factual rebuttal to the breach of duty claim; it does not establish that the breach of duty claim is insufficiently pleaded in the first instance.

Finally, Blue Cross also contends that the allegations of the complaint are defective because the plaintiffs' insurance plan was an "alternate resource" as defined under 42 C.F.R. § 136.61(a), and the complaint does not allege that any available plan coverage was exhausted fully before payments were allegedly supposed to be capped at the statutory rates applicable to federally-funded coverage. That argument is unpersuasive where the governing regulations plainly require that payments be capped at "Medicare-Like Rates" for *all* qualifying services, regardless of the source of funds, as long as the services were authorized by the rules of the federally-funded Indian Health Services "Direct Care" or "Contract Health Services" programs. *See* Plf.'s Resp., Ex. 3, Medicare-Like Rates for CHS Services FAQ ¶¶ 17, 28 (Pg ID 300-02) ("If a Tribe pays for services [] with Tribal funds can they pay using Medicare-like Rates? Yes, as long as they meet CHS eligibility requirements within the regulations and services are authorized by the CHS program."; "Does my

local hospital have to accept these rates? Yes, if the local hospital is a Medicare participating hospital and if your CHS program has authorized payment for the services.").

The complaint sufficiently alleges an overpayment theory based on Blue Cross's obligation to avoid squandering Plan assets on the cost of services that should have been capped at Medicare-Like Rates.

### III.

The plaintiffs have alleged sufficient facts to establish a right to relief on their ERISA claims. However, the state law claims are preempted by ERISA.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. #14] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that counts III through IX of the complaint are **DISMISSED WITHOUT PREJUDICE**. The motion is **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   April 27, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 27, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI

---