## MEDICARE LIKE RATE RE-PRICING AGREEMENT

This Agreement is made and entered into as of 1/13/2011 (the "Effective Date"), by and between Forest County Potawatomi, a sovereign, federally-recognized, Indian Tribe located at 5416 Everybody's Road, P.O. Box 370 Crandon, 54520 ("Tribe") and Little River Band of Ottawa Indians ("Customer").

### RECITALS

A. On July 5, 2007 the Federal Government implemented the Medicare Like Rates Reimbursement on hospital Contract Health Service ("CHS") claims governing claims from hospitals and other facilities that are approved by Medicare.

B. The Tribe has developed the capability of repricing claims from Medicare participating hospitals and other facilities to the new Medicare Like Rates.

C. Customer desires that Tribe provide, and Tribe is willing to provide, Medicare Like Rates Repricing in accordance with the applicable Federal Government's laws and regulations applicable thereto.

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions herein contained, the parties agree as follows:

### Section 1

### SCOPE OF SERVICES

1.1 Tribe shall provide services to Customer for Medicare Like Repricing of hospital and other facility claims all as more fully described in Exhibit A attached hereto and made a part hereof. Tribe shall render such repricing services and deliver repricing claims data to Customer in accordance with the descriptions set forth in Exhibit A. The services described on Exhibit A are subject to all of the terms and conditions of this Agreement and shall not be modified except by mutual consent of both parties in writing.

1.2 Customer shall submit claims to Tribe via mail, email, or fax, at Customer's option. The Customer will be notified by Tribe of the receipt of claims via email. Tribe will return the claim and repricing of the claim to Customer via mail, fax or scan/email within twenty-four (24) hours or the next business day. Claims received by Tribe prior to twelve noon on a business day will be re-priced and returned to Customer on the day of receipt. Claims received after twelve noon will be repricing and returned to Customer the next business day.

1.3 Customer agrees to provide any data or information or any other materials reasonably requested by Tribe in order to allow Tribe to perform the repricing services

**REDACTED**

hereunder in accordance with the terms of this Agreement. All work by Tribe shall be performed in a workmanlike and professional manner by employees of Tribe having a level of skill in repricing of hospitals and other facilities claims which is reasonably required to perform such work in an accurate and reliable manner.

1.4     Anything herein to the contrary notwithstanding, the parties hereto hereby acknowledge and agree that Customer shall have no right to control the manner, means or methods by which Tribe performs the repricing services called for by this Agreement.

1.5     Tribe will, at its own expense, correct any repricing errors which are due either to malfunction of Tribe controlled machines, Tribe employees or Tribe program. Tribe shall have no further liability to Customer or third parties with respect to repricing services provided hereunder and Customer will accept the results, including correction, if applicable, as complete and satisfactory performance.

1.6     Customer shall have exclusive control of all decisions relating to medical necessity of the services provided which generate the re-priced claims and payment to the providers of the services represented by such claims.

## Section 2

### TERM OF AGREEMENT

2.1     This Agreement shall commence on the date and year first written above, and unless modified by mutual agreement of the parties or terminated earlier pursuant to the terms of this Agreement, shall continue for a period of one (1) year. Prior to the termination date Customer must give Tribe ninety (90) days prior written notice of its desire to terminate this Agreement. In the absence of such notification, the Agreement will be automatically renewed for an additional one (1) year period(s), and thereby establish a new termination date(s).

2.2     If either party materially defaults in its performance under this Agreement and fails to substantially cure such default within thirty (30) days after receiving written notice specifying the default, then the party not in default may terminate this Agreement as of the date specified in such notice, which date will be no sooner than thirty (30) days from the initial notice. Provided, however, that defaults in payment by Customer will terminate the Agreement after ten (10) days prior written notice from Tribe.

## Section 3

### FEES AND PAYMENT

3.1     In consideration of the repricing services to be performed by Tribe Customer shall pay [REDACTED] Tribe shall invoice Customer on a monthly basis for repriced claims from the preceding month. Tribe's invoice shall be due and payable within ten (10) days of receipt of invoice.

2

**REDACTED**

3.2     Upon execution of this Agreement Customer shall pay Tribe ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

3.3     Tribe reserves the right to charge and Customer agrees to pay Tribe its standard rates in effect at the time for processing reruns or any other additional work performed by Tribe due to Customer submitting input data which is incorrect, incomplete or not in proper format. Tribe charges for corrective work will be billed on a time and material basis.

3.4     Tribe reserves the right to discontinue services to Customer and terminate this Agreement in the event of a bankruptcy (voluntary or involuntary), in solvency or nonpayment for services in the event such nonpayment continues for a period of ten (10) days following date of Tribe's invoice. Further, Tribe reserves the right to access a one-and-a-half percent (1 ½%) monthly charge on delinquent invoices. Customer agrees to reimburse Tribe for all reasonable collection expenses on delinquent accounts, including reasonable attorneys fees. In this event this Agreement goes beyond the initial one (1) year term, Tribe reserves the right to adjust its charges for repricing services hereunder upon thirty (30) days advance written notice to Customer.

## Section 4

## RIGHTS AND DATA

4.1     As between Customer and Tribe, except as set forth in this Section 4, all right, title and interest in and to the programs, systems, or materials used or produced or supplied by Tribe in performance of the repricing services called for by this Agreement shall remain or become the exclusive property of Tribe.

4.2     All right, title and interest in and to any data and materials furnished to Tribe by Customer are and shall remain the exclusive property of Customer.

## Section 5

## CONFIDENTIAL AND PROPRIETARY INFORMATION

5.1     Tribe acknowledges that in order to perform the services called for in this Agreement, it shall be necessary for Customer to disclose to Tribe certain Confidential Information, such as patient, provider, or contracting data or information. Tribe further acknowledges that the repricing services will of necessity depend upon such Confidential Information. Tribe agrees that it shall not disclose, transfer, use, copy, or allow access to any such Confidential Information to any employees or to any third parties, except for those who are bound by contractual obligations of confidentiality and limitation of use sufficient to give effect to this Section 5. Tribe is permitted to use extracts of this information for analysis with aggregated information from other customers so long as the data is unidentifiable as to the

actual source and meets the definition of "De-identified data" set forth in the HIPAA Regulations. The obligations set forth in Section 5.1 as they pertain to Confidential Information shall survive termination of this Agreement.

     5.2    Each party acknowledges that while performing its obligations under this Agreement it may have access to Propriety Information of the other party. Subject to this Section 5.2, the term "Proprietary Information" means (i) this Agreement and any other agreement between the parties and the discussions, negotiations and proposals related to those agreements and (ii) any information concerning the other party's business including, without limitation, tangible, intangible, visual, electronic, written, oral, present, or future. Each party will keep Proprietary Information of the other confidential and will only use such Proprietary Information to perform their respective obligations under this Agreement and use substantially the same high degree of care to maintain the confidentiality of such Proprietary Information as the receiving party uses with respect to its own similar Proprietary Information. Upon cessation of this Agreement, or upon written request, each party will return or destroy all Proprietary Information of the other. Each party's obligation to maintain confidentiality of the disclosing party's Proprietary Information shall survive the termination of this Agreement. Proprietary Information does not include information that is:

    a.    rightfully known to the recipient prior to negotiations leading up to this Agreement;

    b.    independently developed by the recipient without any reliance on Proprietary Information;

    c.    part of the public domain or is lawfully obtained by the recipient from a third party not under an obligation of confidentiality; or

    d.    required to be disclosed by law or legal process, so long as the recipient uses reasonable efforts to cooperate with the disclosing party in limiting disclosure.

     5.3    Neither party will disclose to the other any Proprietary Information of a third party without the consent of such third party.

### Section 6

### WARRANTIES

     6.1    Customer warrants that it owns all right, title, and interest in and to any data or materials furnished to Tribe hereunder.

     6.2    Tribe warrants that:

    a.    Tribe's performance of the services called for by this Agreement do not and shall not violate any applicable law, rule, or regulation; any contracts with third parties; or any third-party rights in any patent, trademark, copyright, trade secret, or similar right.

    b.    Tribe is the lawful owner or licensee of any software programs or other materials used by Tribe in the performance of the repricing services called for in this Agreement and has all rights necessary to convey to Customer the re-priced claims.

6.3    Tribe agrees to comply with all relevant and applicable federal, state, and local regulations.

### Section 7

### LIMITATION OF LIABILITY

7.1    Except as expressly provided in this Agreement, Tribe does not make any warranty, express or implied, with respect to the services rendered by its personnel or the results obtained from their work, including, without limitation, any implied warranty of merchantability or fitness for a particular purpose. In no event shall Tribe be liable for consequential, incidental, special, or indirect damages, or for acts of negligence that are not intentional or reckless in nature, regardless of whether it has been advised of the possibility of such damages.

7.2    Customer agrees that Tribe's liability hereunder for damages, regardless of the form of action, shall not exceed the total amount paid for services within the last six (6) month period. Furthermore, neither Customer nor Tribe may assert any cause of action against the other that occurred more than one (1) year prior to the filing of a suit alleging such cause of action. No limitation as to damages for personal injury or for warranties under Section 6 above is intended.

7.3    Force Majeure: Tribe shall not be liability to Customer for any failure or delay caused by events beyond Tribe's reasonable control, despite Tribe's best efforts, including, without limitation, Customer's failure to furnish necessary information; sabotage; failure or delays in transportation or communications; failures or substitutions of equipment; labor disputes; accidents; shortages of labor, fuel, raw materials or equipment; or technical failures.

### Section 8

### MISCELLANEOUS

8.1    This Agreement is not assignable except with the express written consent of the other party, which consent shall not be unreasonably withheld.

5

8.2 This Agreement shall be binding on the parties hereto and their respective successors and assigns.

8.3 This Agreement shall be interpreted and construed in accordance with the laws of the State of Wisconsin and the United States, as applicable, without giving effect to Wisconsin's conflict of laws rules. This Agreement shall not be construed to waive the Tribe's sovereign immunity in any way.

8.4 The parties are and shall be independent contractors to one another, and nothing herein shall be deemed to cause this Agreement to create an agency, partnership, or joint venture between the parties. Nothing in this Agreement shall be interpreted or construed as creating or establishing the relationship of employer and employee between Customer and either Tribe or any employee or agent of Tribe.

8.5 Tribe shall, at its sole expense, obtain and carry in full force and effect, during the term of this Agreement, insurance coverage of the types and in the amounts necessary to perform its duties under this Agreement. Upon the request of Customer, Tribe shall provide Customer with evidence satisfactory to Customer of such insurance.

8.6 All remedies available to either party for one or more breaches by the other party are and shall be deemed cumulative and may be exercised separately or concurrently without waiver of any other remedies. The failure of either party to act in the event of a breach of this Agreement by the other shall not be deemed a waiver of such breach or a waiver of future breaches, unless such waiver shall be in writing and signed by the party against whom enforcement is sought.

8.7 All notices required or permitted hereunder shall be in writing addressed to the respective parties as set forth herein, unless another address shall have been designated, and shall be delivered by hand, by facsimile or by registered or certified mail, postage prepaid.

8.8 This Agreement constitutes the entire Agreement of the parties hereto and supersedes all prior representations, proposals, discussions and communications, whether oral or in writing. This Agreement may be modified only in writing and shall be enforceable in accordance with its terms when signed by the party sought to be bound.

8.9 This Agreement shall be construed and governed in accordance with the laws of the State of Wisconsin and the United States, as applicable, without giving effect to Wisconsin's conflict of laws rules. This Agreement shall not be construed to waive the Tribe's sovereign immunity in any way.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives, on the date and year first above written.

CUSTOMER:  Forest County Potawatomi Community

By: /s/ Tony B. Roman  
   Signature

Title: Ogema

Date: 1-18-11

By: /s/ [signature]  
   Signature

Title: Chairman

Date: 1-25-11

7

**REDACTED**

## MEDICARE LIKE RATE RE-PRICING AGREEMENT

### Exhibit A

1) The Forest County Potawatomi Insurance Department (FCPID) will re-price the hospital bills (UB04s) and professional fee bills (CMS 1500s) to 100% of the Medicare payment amounts.

2) Claims/bills can be submitted to FCPID via mail, e-mail, fax or EDI.

3) Re-pricing sheets will be generated for each claim/bill submitted.

4) The re-pricing sheet will be transmitted back to you via mail, e-mail, or by fax based on your preference.

5) The re-pricing sheet will contain the documentation on how the claim was re-priced.

6) You control decisions about eligibility for CHS and the medical necessity of the services provided.

7) You control when payment is made to the provider.

8) Claims/bills received prior to 12:00 noon on a business day will be re-priced and turned around on the same day whenever possible. Claims received after 12:00 noon will be re-priced and turned around on the next business day.

9) Claims for Critical Access Facilities (CAH) may initially take longer to re-price due to the time needed to collect the data for re-pricing.

10) There is a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ re-priced no matter the amount of the claim or the amount of savings you realize. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

11) The FCPID and all of our systems are HIPAA compliant.



01-13-11 A11:27 IN

## CERTIFICATION OF EXECUTION

At a <u>Closed</u> Session of the Little River Band of Ottawa Indians Tribal Council held at the Little River Band <u>Conf</u> Room on <u>Jan. 12</u>, 2011, with a quorum being present for such vote, the Tribal Council adopted Resolution # 11-0112-006 - <u>Approval of a contract with the Forest County Potawatomi to provide Medicare Like Rates Re-Pricing for hospital and other Claims under Contract Health Services.</u>

By my signature, I certify that an original of said Resolution was delivered to the Tribal Ogema for Execution in accordance with Article V, Section 5, (Sub.___) of the Little River Band of Ottawa Indians Tribal Constitution.

Date delivered to Ogema: <u>Jan 12, 2011</u>  Time: <u>4:58 p.m.</u>

Signature of Recorder: _____

Acknowledgement of Receipt by Tribal Ogema: _____

Manner of Execution determined by Tribal Ogema:

☐ Copy of Resolution forwarded to Personnel/Department, with instructions for Execution (written instructions attached):

_____  _____
Name                          Title

☐ Creation of New Regulation or Executive Order Regulation/Executive Order Number:

_____

☐ Expected date of completion: _____

☐ Other: _____

☐ Ogema requires additional information from the Tribal Council in order to complete Execution as follows:
_____
_____
_____

Returned to Tribal Council for further action on: _____

Date: <u>1-12-11</u>    Signature of Ogema _____



# Little River Band of Ottawa Indians
375 River Street
Manistee, MI 49660
(231) 723-8288

### Resolution # 11-0112-006

*Approval of a contract with the Forest County Potawatomi to provide Medicare Like Rates Re-Pricing for hospital and other claims under Contract Health Services*

WHEREAS, the status of the *Gaá Čhíng Ziíbi Daáwaa Anishinaábek* (Little River Band of Ottawa Indians) as a sovereign and Treaty-making power is confirmed in numerous treaties, from agreements with the initial colonial powers on this land, to various treaties with the United States; and

WHEREAS, the Little River Band of Ottawa Indians (Tribe) is descended from, and is the political successor to, the Grand River Ottawa Bands, signatories of the 1836 Treaty of Washington (7 Stat. 491) with the United States, as reaffirmed by federal law in P.L. 103-324, enacted in 1994; and

WHEREAS, the Tribe adopted a new Constitution, pursuant to a vote of the membership on May 27, 1998, which Constitution became effective upon its approval by the Assistant Secretary-Indian Affairs on July 10, 1998; and

WHEREAS, the Tribe adopted amendments to the Constitution on April 26, 2004, which became effective upon approval by the Assistant Secretary-Indian Affairs on May 13, 2004; and

WHEREAS, the Tribal Council is authorized under Article IV, Section 7(a) to provide for the public health, peace, morals, education and general welfare of the Little River Band and its members; and

WHEREAS, the Tribal Council, pursuant to Article IV, Section 7(b) of the Constitution, has the power to authorize and ratify agreements and contracts negotiated by the Tribal Ogema; and

WHEREAS, the Forest County Potawatomi Insurance Department offers claims re-pricing as a service to other Tribes that can result in significant savings for claims paid under Contract Health Services; and

Resolution #11-0112-006
Page 2 of 2

WHEREAS, the savings derived through this Agreement would enable the Little River Band of Ottawa Indians to be able to provide more services through funds allocated under the Contract Health Services program.

NOW THEREFORE IT IS RESOLVED THAT, the Tribal Council of the Little River Band of Ottawa Indians does hereby ratify the Agreement with the Forest County Potawatomi to provide Medicare Like Rates Re-Pricing for hospital and other claims under Contract Health Services, and authorizes the Tribal Ogema to execute the contract.

## CERTIFICATE OF ADOPTION

I do hereby certify that the foregoing resolution was duly presented and adopted by the Tribal Council with _9_ FOR, _0_ AGAINST, _0_ ABSTAINING, and _0_ ABSENT, at a Regular Closed Session of the Little River Band of Ottawa Indians Tribal Council held on January 12, 2011, at the Little River Conference Room in Manistee, Michigan, with a quorum being present for such vote.

_____
Janine M. Sam, Council Recorder

_____
Stephen Parsons, Council Speaker

Attest:

Distribution:   Tribal Ogema
                Tribal Council

2